*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0023P (6th Cir.)
File Name: 04a0023p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

OMNIPOINT HOLDINGS,
INCORPORATED, doing
business as VoiceStream
Wireless,
    *Plaintiff-Appellant,*

    *v.*

CITY OF SOUTHFIELD;
SOUTHFIELD CITY COUNCIL,
    *Defendants-Appellees.*

No. 02-1713

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-72482—Denise Page Hood, District Judge.

Argued: December 2, 2003

Decided and Filed: January 15, 2004

Before: GUY and GILMAN, Circuit Judges; REEVES,
District Judge.[*]

_____

[*] The Honorable Danny C. Reeves, United States District Judge for
the Eastern District of Kentucky, sitting by designation.

_____

## COUNSEL

**ARGUED:** Marc L. Newman, MILLER SHEA P.C., Troy, Michigan, for Appellant. Gerald A. Fisher, SECREST, WARDLE, LYNCH, HAMPTON, TRUEX & MORLEY, Farmington Hills, Michigan, for Appellees. **ON BRIEF:** Marc L. Newman, E. Powell Miller, MILLER SHEA P.C., Troy, Michigan, for Appellant. Gerald A. Fisher, SECREST, WARDLE, LYNCH, HAMPTON, TRUEX & MORLEY, Farmington Hills, Michigan, for Appellees.

GUY, J., delivered the opinion of the court, in which GILMAN, J., joined. REEVES, D. J. (pp. 13-17), delivered a separate dissenting opinion.

_____

## OPINION

_____

RALPH B. GUY, JR., Circuit Judge. Plaintiff, VoiceStream Wireless (VoiceStream), appeals from the grant of summary judgment to defendants, the City of Southfield and its City Council, in this action alleging violations of the Telecommunications Act of 1996, 47 U.S.C. § 332, and claims under 42 U.S.C. § 1983. The district judge found that the Telecommunications Act claims were barred by the 30-day statute of limitations for instituting suit, and that the plaintiff did not have standing to raise the issues asserted in its § 1983 count. On appeal it appears that VoiceStream only raises issues that arise under the Telecommunications Act (the Act). Our review of the record and applicable law convinces us that summary judgment for the defendants was appropriately granted and we affirm, although on grounds somewhat different than did the trial judge.

## I.

VoiceStream is a provider of personal communications systems and serves customers in southeastern Michigan. In order to provide this service, antenna towers are needed at various locations. Plaintiff sought to build a 150-foot monopole antenna tower in Southfield to cover a gap in its coverage. On July 12, 2000, plaintiff submitted an application seeking a special use permit to build a tower in the rear yard of a residence owned by Stuart Martin. This property was located in an area zoned R-E Single Family Residential, which was developed with low-rise residential homes. Under Southfield's ordinances, such an application goes first before the Planning Commission and then before the City Council. At the conclusion of its hearing on October 18, 2000, the Planning Commission voted 5-0 to deny the application.

The City Council has a Site Plan Commission which considers applications of this nature before they come before the full Council, and this committee discussed with plaintiff the possibility of placing the tower at other locations in the immediate area. For a variety of reasons, the plaintiff did not find any of the other locations to be acceptable. The matter then went before the City Council on February 26, 2001. After a hearing, the Council voted 7-0 to deny the application, listing eight reasons for the denial. The action of the Council became final when the minutes of the February 26 meeting were approved on April 9, 2001.

Although VoiceStream had rejected initially the other locations suggested by the City, it did explore with representatives of the City the possibility of locating the tower in a nearby City park. These discussions were ongoing before the final vote of denial by the Council took place. At one point in November of 2000, the city planner sent a letter to plaintiff's attorney setting forth proposed lease terms for the City property. VoiceStream was reluctant to move

forward, however, because the Martin property was still their first choice and the terms the City proposed as far as lease rental was concerned required a greater financial outlay than was acceptable to VoiceStream. The matter was further complicated by the fact that the park property has been deeded to the City with a use restriction, and that restriction would have to be waived by the grantors before a tower could be constructed.

After the Council denied the special use application for the Martin property, the plaintiff again began to pursue the possibility of using the park property. Another special use application was filed and a hearing was set before the Plan Commission. Before this hearing could be held, the Plan Commission became aware that the City Council would not approve a sale or lease of the park property, so the hearing was cancelled by letter dated June 4, 2001. On July 3, 2001, this lawsuit was filed.

## II.

Because these towers are often not welcome, but need to be erected to support an efficient nationwide communication system, the Act affords certain protections to companies like plaintiff and provides that the governmental units just cannot deny these applications out of hand, but must make a reasoned and reasonable denial and give reasons in writing for the denial. The City of Southfield has an ordinance that deals with this type of application and the procedures to be followed. For whatever reason, the City has a number of these towers within the city limits and, in fact, has granted all of the previous 23 applications submitted for similar towers. Although the record is silent on this point, one can assume that most, if not all, of these towers were not placed in residential districts.

The ordinance governing tower applications sets forth certain criteria for the granting or denial of permit

applications. Before acting, the Council held a hearing and heard from concerned residents as well as two "experts"; one being the City Planner and the other being an outside consultant the City used when applications of this nature were before the Council. The reasons the City gave for denial are, in general, that the residential character of the neighborhood would be harmed by a tower of this nature, property values would decline, and the plaintiff had not complied with the city ordinance in sufficient detail to show the technical necessity for having to place this tower at or near the locations at issue here.[1]

---

[1]

Motion by Condino supported by Frasier.

**RESOLVED**: That GP:1074/SP:1102, the Special Use and Site Plan Review Request of Voice Stream Wireless to construct a 150 foot high monopole communications tower and equipment shelter on part of Sidwell Parcel 2419-351-007, located at 27390 Ten Mile Road, at the northeast corner of Ten Mile and Inkster Roads, site plan dated February 15, 2001, and received by the Planning Department on February 20, 2001, be denied for the following reasons:

1. The submitted Site Plan and Special Use Request for a one hundred fifty foot (150') high monopole tower to be located in the rear yard of a single family home is not harmonious with the surrounding area, which is low rise, single family residential on all sides and would be demonstrably injurious to existing and proposed neighborhoods and detrimental to the public welfare, contrary to Section 5.58D(1)(a) and D(1)(b) of the City's Zoning Ordinance.

2. The applicant has not demonstrated a justification for the proposed one hundred fifty foot (150') height of the proposed monopole tower nor provided an evaluation of alternative designs which might result in a lower height, contrary to Section 5.58D(1)(d) of the City's Zoning Ordinance.

3. The applicant has not demonstrated why other sites recommended by the City for the proposed one hundred fifty foot (150') high monopole tower are not appropriate, contrary to

---

Section 5.58D(1)(e) of the City's Zoning Ordinance.

4. The applicant has not demonstrated that there is no location outside of a single family residential district for the proposed one hundred fifty foot (150') high monopole tower which can reasonabl[y] meet its coverage and/or capacity needs, contrary to Section 5.58F(1) of the City's Zoning Ordinance.

5. The submitted Site Plan shows a one hundred fifty foot (150') high monopole tower design which is not compatible with the existing character of the proposed site, the neighborhood, or the general area, contrary to Section 5.58F(2) of the City's Zoning Ordinance.

6. The submitted Special Use and Site Plan does not meet the requirements of Sections 5.58(F)(3)(a) through (f) of the City's Zoning Ordinance because there is available for this use, both a public school site and a municipal park located on Inkster Road, a half mile north of the site. Additionally, there is a religious site located at the southwest corner of Ten Mile and Inkster Roads and a large, vacant tract of land/open space directly south of the proposed site which could accommodate this use.

7. There are currently twenty three (23) freestanding wireless communication towers with collocators located within the City which provide very adequate wireless communication services and coverage in the City in accordance with the purpose and intent of the City's Wireless Communications Facilities Ordinance, as outlined in Section 5.58A of the City's Zoning Ordinance.

8. The submitted Site Plan adheres to the applicant's overall tower system plan for the Detroit metropolitan area which has apparently been designated in a manner, unlike the design of any other wireless company with a tower located in Southfield, that applicant claims requires the location of the proposed tower in the rear yard of a single family home rather than modifying the system plan to allow for a location that will not adversely impact an exclusively residential area, contrary to Section 5.58D(1)(a) and D(1)(b) of the City's Zoning Ordinance.

A roll call vote was taken.
Jordan, yea[;] Lantz, yea; Frasier, yea; Condino, yea; Lawrence, yea;

### III.

The Act provides that a person adversely affected by a final action or failure to act by a State or local government may file an action within 30 days of the local government's final action or failure to act. 42 U.S.C. § 332(c)(7)(B)(v). The trial judge held with regard to the Martin site, that defendants' "final action" which started the statute of limitations running was the issuance and approval of the minutes of the February 26, 2001 Council meeting. This occurred on April 9, 2001. Since suit was not filed within 30 days of the April date, the district judge dismissed that portion of plaintiff's complaint that related to the Martin property.

Plaintiff offers several reasons why the district court erred in applying the statute of limitations, but relies most heavily on a decision from this court decided after this matter was dismissed in the trial court. In *New Par v. City of Saginaw*, 301 F.3d 390, 395-96 (6th Cir. 2002), we held, *inter alia*, that in order to meet the "decision . . . in writing" requirement of 47 U.S.C. § 332(c)(7)(B)(iii), a governmental unit's decision must (1) be separate from the written record, (2) describe the reasons for the denial, and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons.[2]

---

Brateman, yea; Samona, yea.
The resolution was approved 7 yeas, 0 nays.

[2]This section provides that: "Any decision by a State or local government . . . to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." *Id.*

Assuming, *arguendo*, that *New Par* applies retroactively, we conclude the actions taken by the Southfield City Council comply with the requirements that are set forth for a valid "decision in writing." The council resolution clearly lists the reasons for the denial and offers an explanation in support of those reasons. Whether the reasons set forth are sufficient is always a matter that an unsuccessful applicant can challenge with a timely filed court action.[3]

The mandate that the decision must "be separate from the written record" requires additional exploration. To begin with, there is no guidance in *New Par* as to what constitutes the written record. The phrase "separate from the written record" was imported from the case of *Southwestern Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 60 (1st Cir. 2001) (*Bell*). In *Bell* the court had occasion to review the decision of a zoning board of appeals denying a special use permit for a tower. After the zoning board hearing, the board issued a short and simple decision indicating, at least in part, the reasons for the denial. The First Circuit not only found that this met the "in writing" requirement, but the "substantial evidence" requirement as well. Despite the fact that the TCA makes no mention of the writing being in a separate document, the court also stated: "We conclude, therefore,

---

[3]As is often the case, when a decision sets forth new requirements for future guidance, the context for the decision is made up of the facts before the court at that time. It is next to impossible to set forth a "one size fits all" set of standards, and so the requirements when next applied must take into account the new context. For example, requirements two and three in *New Par* may overlap. If a city turned down a tower application because the height of the tower would be a hazard to airplanes landing at a nearby airport, the statement of the reason would also *be* the explanation.

that the TCA requires local boards to issue a written denial separate from the written record."[4]

The factual situation in *Bell* is different from that in this case. The action being reviewed in *Bell*, as it was in *New Par*, is that of the zoning board of appeals. The action being reviewed here is that of the city council. Under the charter of the City of Southfield the Council takes formal action by passing a resolution. Just as a court speaks through its orders, the Southfield City Council speaks through its resolutions. This formal resolution is a writing separate from the hearing record. In fact, in this case there are two or arguably three hearing records. There was the hearing before the City Plan Commission, the meeting with the Site Plan Commission, and the hearing before the City Council. Whatever records were made of those hearings are separate from the resolution passed by the City Council, although the resolution itself does contain the reasons for the denial as is required by *New Par*.[5] Although the *minutes* of a council meeting will encompass all the matters considered by the council at that meeting, each resolution deals with only one discrete subject. In our view this is sufficient to meet the "separate writing" requirement of *New Par*. The primary purpose of the separate writing

---

[4] In *Laurence Wolf Capital Management Trust v. City of Ferndale*, 2003 WL 1875554 (6th Cir. April 10, 2003) (unpublished disposition), a case decided after *New Par*, the panel concluded that a set of zoning board of appeals minutes met the "in writing" requirement of the TCA, although the panel ultimately decided this writing was an impermissible retroactive cure.

[5] In this regard the "record" is not to be confused with the type of verbatim record made in a court of record. *Bell* is enlightening in this regard: "Passage of the TCA did not alter the reality that the local boards that administer the zoning laws are primarily staffed by laypeople. Though their decisions are now subject to review under the TCA, it is not realistic to expect highly detailed findings of fact and conclusions of law." *Id.* at 59.

requirement is to allow a reviewing court to focus with precision on the action that was taken and the reasons supporting such action. The council resolution at issue here would afford a reviewing court that opportunity.[6]

In this regard, the assertion in the dissent that allowing the council resolution to satisfy the separate writing requirement will require applicants "to wade through voluminous meeting minutes to extract the reasons for the denial" does not comport with the record in this case. Here, VoiceStream had a representative at the council meeting where the final action was taken and knew the application had been denied. A copy of this particular council resolution separate from any other resolutions passed at the same meeting was presumably obtainable from the City Clerk in a matter of hours after the action was taken. Indeed, if litigation was contemplated, the council resolution is the only document which would definitively show the formal action taken by the council. Additionally unlike a letter or some other means of notification, there is a date certain when a council resolution becomes effective. The result in this case was that the applicant had considerably more time than 30 days from the date it actually learned of the denial to institute suit, since the council resolution did not become effective on the date of passage. We can imagine no other document that would be easier to work with or more useful or informative to an

---

[6] In *Laurence Wolf*, the court, in rejecting one set of zoning board minutes as meeting the separate writing requirement, stated: "The January 18, 2000, meeting record does not satisfy the 'in writing' test because it is not separate from the meeting's written record concerning other Board issues." 2003 WL 1875554 at **6. We are not privy to the record being reviewed in *Laurence Wolf*; however, we reject the concept that a resolution in meeting minutes will never meet the separate writing requirement, if it otherwise allows meaningful judicial review, simply because the minutes contained other dispositions or resolutions dealing with other subjects. In any event, since *Laurence Wolf* is unpublished, it is not binding precedent.

applicant or to a reviewing court than the resolution which embodies the reasons for denial.

Since we conclude that the resolution of the city council meets the *New Par* standards, the 30-day clock started running when the resolution became final on April 9, 2001.

In order to avoid the consequences of its late filing, plaintiff claims that its application really was for permission to erect a tower somewhere within its "search ring" which would have included areas adjacent to or near the Martin property. Since the plaintiff was still talking to the City about the possibility of the public park site, plaintiff contends that there was no denial of its "search ring" application until it got the letter from the defendant indicating it would not sell or lease any of the park property. There are several problems with this "created after the fact" argument, but we need look no further than the special use application first submitted which clearly involves only the Martin property. Like the distict judge, we can understand that the plaintiff might have felt some reluctance to start a lawsuit while negotiations were ongoing on the park property. We don't see that as an insurmountable problem, however, because the City, having granted 23 previous tower applications, was familiar with the Act and would have understood if the plaintiff had just come to them and said, "we have to start this suit to protect our right of action. It's not intended as a hostile or unfriendly act, and we still want to work this out with you."[7]

## IV.

Plaintiff also attempts to construct a cause of action over the defendants' failure to lease a portion of the City-owned park property for placement of the proposed tower. The

---

[7]Voicestream also could have asked the City to agree to waive the 30-day period of limitations.

district court concluded that since plaintiff had no property interest in this property, it had no standing to bring suit. In our view, plaintiff, under the Act, may have had standing, but we nonetheless affirm the judgment for defendants on this issue for a much more fundamental reason. The City owned this deed-restricted property, and the plaintiff simply cannot compel the City to sell or lease a portion of the park if it chooses not to. Although plaintiff argues that it had a "contract to make a contract" based upon the negotiations that had transpired between the parties, we find this argument totally lacking in merit. Only the City Council through formal action, after the grantors had agreed to waive the deed restriction, could have authorized this lease. This simply never occurred.

**AFFIRMED.**

———————

**DISSENT**

———————

REEVES, District Judge, dissenting.  Because I believe the majority has misconstrued the holding in *New Par v. City of Saginaw*, 301 F.3d 390 (6th Cir. 2002), I respectfully dissent. In *New Par*, this court held that

> for a decision by a State or local government or instrumentality thereof denying a request to place, construct or modify personal wireless service facilities to be "in writing" for the purposes of 47 U.S.C. § 332(c)(7)(B)(iii), it must (1) be separate from the written record; (2) describe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons.

*New Par*, 301 F.3d at 395-96.  Here, there is no debate that the City Council met the second and third requirements. Only the first requirement is disputed.

*New Par* did not specifically discuss the "separate writing" requirement.  Instead, it adopted this requirement from *Southwestern Bell*, 244 F.3d 51 (1st Cir. 2001).  In *Southwestern Bell*, the Court held that "[e]ven where the record reflects unmistakably the Board's reasons for denying a permit, allowing the written record to serve as the writing would contradict the language of the Act.  The TCA distinguishes between a written *denial* and a written *record*, thus indicating that the record cannot be a substitute for a *separate* denial."  *Southwestern Bell*, 244 F.3d at 60 (emphasis added).

The majority notes that "[t]he primary purpose of the separate writing requirement is to allow a reviewing court to

focus with precision on the action that was taken and the reasons supporting such action.  The council resolution at issue here would afford a reviewing court that opportunity." While I agree with this statement, I also believe that the "separate writing" requirement's purpose is to greatly simplify matters for both the zoning applicant and the court. It forces the city to put forth its reasons in a separate document, preventing the parties from having to wade through voluminous meeting minutes to extract the reasons for the denial.[1]  In many situations, the meeting minutes might not be available to the wireless provider for some time. The desire to simplify and expedite the process are extremely relevant, given that the TCA provides wireless providers only 30 days in which to bring suit.

Further, *Southwestern Bell's* statutory construction of the TCA is reasonable.  With only a 30-day period to institute an action, Congress most likely wished to streamline the city-review process by forcing city councils and zoning boards to issue separate decisions that make it possible for the zoning applicant to have a separate writing which clearly establishes a denial (supported by reasons for the denial), rather than having the denial buried in meeting minutes.  This procedure is efficient, it is extremely easy for the city to satisfy, and I believe it is the process mandated by *New Par*.

In concluding that the City Council's actions satisfy the "separate writing requirement," the majority argues that when the Council passed the resolution denying VoiceStream's special use permit, the resolution was actually separate from

———————

[1]For this reason, the logic from *Laurence Wolf Capital Mgmt. Trust v. City of Ferndale*, 61 Fed. Appx. 204, 211 (6th Cir. 2003), discussed *infra*, is illustrative because there the court noted that meeting minutes which discuss only the zoning variance and discuss no other matters could be "separate from the written record."  In such a situation, there is less concern over the decision being buried in the minutes because the minutes discuss *only* the zoning variance.

the written record, even though the decision was contained within the meeting minutes. The majority distinguishes the "minutes" from the "record," contending that the resolution passed by the City is not a part of the record, even though it is contained within the meeting minutes. It argues that the written record only includes the discussion of the resolution, but not the resolution itself.

With all due respect, I disagree with this analysis because I believe the terms "written record" and "meeting minutes" are synonymous. The meeting minutes *are* the written record. Anything contained in those minutes is part of the written record. Therefore, the resolutions passed by the Council are part of the written record because they are contained in the meeting minutes. Even if one accepts the proposition that a resolution contained in the minutes is not a part of the written record, the resolution in this case was not a written decision *separate* from the written record. It was contained in the meeting minutes that included the written record. It was not separate from it.

The majority's argument significantly narrows the "separate writing requirement" of *New Par*. Using the majority's logic, the only time the "separate writing" requirement would matter is in a situation where the reasons for denial are contained in the discussion of the resolution but not in the resolution itself. Such reasoning allows a city council or zoning board to simply issue its decision through its meeting minutes. I do not believe that *New Par* or the TCA authorize this result.

In *Laurence Wolf*, this court found that meeting minutes were not separate from the written record when they discussed other board matters. Here, the minutes discussed many other matters. Indeed, the denial in *Laurence Wolf* was issued in the same fashion as the denial in this case:

[t]he board did not issue any written decision denying the variance request. Instead, it reflected its denial in the meeting minutes. The minutes stated the Board based its decision on ". . . changes to the character of the neighborhood which would result from construction of the proposed structure, no hardship being justified by the petitioner and the problem being self-created."

*Laurence Wolf*, 61 Fed. Appx. at 208.

The panel in *Laurence Wolf* held that these minutes do not "satisfy the 'in writing' test because they were not separate from the meeting's written record concerning other Board issues." *Id*. at 211. Moreover, the writing that was held to be "separate from the written record" in *Southwestern Bell* was truly separate: the board voted at its meeting to deny the request, then two days later filed a separate written decision. *Southwestern Bell*, 244 F.3d at 56.

Here, I believe that the City Council's issuance of its decision did not comply with *New Par*. I would include within the definition of "written record" any resolutions that are only memorialized in the minutes and not issued in a separate writing. Thus, I would not consider the board's resolution, contained within the meeting minutes, to be a decision "separate from the written record." When the board formally approved the minutes months later, that writing was separate from the written record, however, it did not include any reasons for the denial.

The City Council seeks to rely on the brief 30-day statute of limitations to prevent judicial review of its denial of VoiceStream's special use permit. The requirements of *New Par* make sense in the context of a 30-day statute of limitations and they should be strictly enforced when determining when to commence the TCA's limitations period. *New Par* forces a local board that denies a wireless provider's zoning variance to issue a *separate* decision, supported by

reasons for the denial.  Doing so greatly eases the review process for the wireless provider, burdened by a 30-day statute of limitations, at little or no expense to the local board. Such requirements also simplify judicial review.  Because I believe that the City Council must strictly comply with the requirements of *New Par* when attempting to bar litigation *via* a statute of limitations claim, I respectfully dissent from the majority's conclusion that the City Council's decision was "separate from the written record."

   In all other respects, I agree with the majority's opinion.