# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3190

_____

NE Colorado Cellular, Inc., a Colorado corporation, doing business as Viacro Wireless

*Plaintiff - Appellant*

v.

City of North Platte, Nebraska

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: May 13, 2014
Filed: August 22, 2014

_____

Before RILEY, Chief Judge, BEAM and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

NE Colorado Cellular, doing business as Viaero Wireless ("Viaero"), sought to construct a telecommunications tower in the City of North Platte, Nebraska ("the City"). The North Platte City Council ("City Council") voted to deny Viaero's application for a permit to build the tower, finding that the tower would be inharmonious with the neighborhood in which Viaero proposed to build. Viaero filed

suit against the City for violation of the Telecommunications Act of 1996 (TCA), alleging that the City Council decision was neither "in writing" nor "supported by substantial evidence." The district court[1] upheld the City's decision. We affirm.

## I. *Background*

Viaero is licensed by the Federal Communications Commission to provide personal wireless services in Nebraska, including the City. Viaero sought to build a telecommunications ["telecom"] tower in the City to improve its network coverage. Viaero located what it considered a suitable site in a B-1 zoning area and negotiated the purchase of that site.

Under applicable City ordinances, a B-1 zone is eligible for placement of a telecom tower after receipt of a conditional use permit (CUP). The application for a CUP must be reviewed by the City Planning Commission ("Commission") and approved by the City Council. North Platte Code of Ordinances § 156.322 provides that conditional uses must "be in harmony with the character of the area and the most appropriate use of the land."

On March 11, 2012, Viaero applied for a CUP to install a 100-foot telecom tower and related support structures at the aforementioned site. Viaero stated that the tower would address a lack of reliable in-building wireless service in the City. On April 24, 2012, the Commission conducted a public hearing on Viaero's application. The Commission received both live testimony and letters from property owners near the proposed tower site. After the hearing, the Commission issued a summary report, which it provided to the City Council. The Commission's report recommended denial of the application because the tower would not be in harmony with the character of the area.

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

The City Council conducted a public hearing on May 15, 2012. Two people, a Viaero representative and the previous owner of the proposed tower site, spoke in favor of the tower. Twelve residents spoke in opposition. The hearing minutes, which summarized the residents' testimonies, state that the residents opposed the tower because

> it is not appropriate or harmonious for the historic neighborhood, it could decrease the property values of the homes in the area, the tower could be dangerous to the public, the tower will be an eyesore for the busy intersection and there are other places in North Platte that would be better suited for the tower.

The City Council voted 6-2 in favor of a motion denying the application. The minutes of the council meeting summarize the motion and resolution:

> Stoll moved and McGuire seconded the motion to find the request for a Conditional Use Permit to allow a 100' tower and a communication facility building located at [the proposed tower site] does not meet the minimum standards stated in the North Platte Code of Ordinances Section 156.322 and deny the Conditional Use Permit as requested based on the following factual findings: 5. The use is not in harmony with the character of the area and it is not the most appropriate use of the land as it is a historic neighborhood and the tower could decrease property values in the area. Roll call vote: "AYE": Barrett, Stoll, McNea, McGuire, Carman, Steinbeck. "NAY": Pederson, Campbell. Motion carried.

Viaero sued the City, claiming that the City violated the TCA. *See* 47 U.S.C. § 332. Viaero alleged several violations, only two of which are relevant here. First, Viaero contended that the denial was not "in writing" as the TCA requires. Second, Viaero contended that the decision was not supported by substantial evidence contained in a written record. The parties stipulated to the relevant facts and filed

-3-

cross-motions for summary judgment. The district court granted the City's motion and denied Viaero's motion.

The district court noted that legal authorities are split on the meaning of "in writing" in the TCA and that the question remains open in this circuit. The majority rule—followed by the First, Seventh, and Ninth Circuits, and urged by Viaero—requires that a decision "(1) be separate from the written record; (2) describe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons." *New Par v. City of Saginaw*, 301 F.3d 390, 395–96 (6th Cir. 2002) (citing *Sw. Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 59–60 (1st Cir. 2001)). The district court noted that this circuit has assumed without deciding that the majority rule is correct. *See Sprint Spectrum, L.P. v. Platte Cnty, Mo.*, 578 F.3d 727, 731–32 (8th Cir. 2009).

The minority rule—articulated by the Sixth Circuit, urged by the City, and ultimately adopted by the district court—does not require that the decision and record be separate writings as long as the record permits the reviewing court to "focus with precision on the action that was taken and the reasons supporting such action." *Omnipoint Holdings, Inc. v. City of Southfield*, 355 F.3d 601, 606 (6th Cir. 2004). Here, the district court found that the City Council resolution satisfied the "in writing" requirement because the motion and meeting minutes reflect the action taken and "contained an explanation of the reasons sufficient to allow the Court to evaluate the evidence in the record that supports those reasons."

The district court also found that the City's denial was supported by substantial evidence. The court "read[ ] the City's denial as resting upon two separate grounds: (1) the tower would not be in harmony with the character of the area, which was a historic neighborhood; and (2) the tower could decrease property values in the area."

-4-

The court found that only the first reason was supported by substantial evidence, but concluded that one ground was sufficient for the purposes of the TCA.

The court found that the tower's proposed height of 100 feet "would have clashed with the surrounding area," supported by testimony that the tower would be "the highest structure anywhere in the area and as such would be an eyesore." The tower would be surrounded by one- and two-story buildings; nothing approaching 100 feet tall. According to the court, the height of the tower alone would suffice to support the City's decision. The court found that "[s]ubstantial evidence also supports the Council's conclusion that the tower would be incompatible with the historic character of the neighborhood." Acknowledging that very little in the record describes this "historic character," the court stated that it was "confident that the members of the North Platte City Council know their city well enough that they can accurately discern the character of its neighborhoods." The court concluded that resident testimony that it was a "historic neighborhood" sufficed to support the City Council's decision.

## II. *Discussion*

"We review the district court's grant of summary judgment de novo, construing all issues of material fact in the light most favorable to the nonmoving party." *USCOC of Greater Mo. v. City of Ferguson, Mo.*, 583 F.3d 1035, 1039 (8th Cir. 2009) (citation omitted).

"The TCA enactment in 1996 made substantial changes to the federal regulation of telecommunications as Congress sought to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition." *USCOC of Greater Mo., LLC v. Cnty of Franklin, Mo.*, 636 F.3d 927, 930 (8th Cir. 2011) (quotations and citations omitted). The TCA nevertheless "preserved the

authority of state and local governments over zoning and land use issues," with some limitations. *Id*.

The TCA provides in relevant part:

A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B)(ii)–(iii).

Viaero contends that the City satisfied neither the "in writing" nor the "supported by substantial evidence" requirements. Viaero argues that the district court applied an improper interpretation of the "in writing" requirement and that under the appropriate interpretation, the City's denial violates the TCA.

A. *"In writing"*

Courts have adopted four different interpretations of the TCA's "in writing" requirement.[2] The first, adopted by a number of district courts, requires that the denial itself and the "written record" be separate documents. *Smart SMR of N.Y., Inc. v. Zoning Comm'n of Stratford*, 995 F. Supp. 52, 57 (D. Conn. 1998). The *Stratford* court reasoned that because "the statute draws a distinction between the written

_____

[2]The Supreme Court has granted a writ of certiorari to resolve the split. *T-Mobile S., LLC v. City of Roswell, Ga.*, 731 F.3d 1213 (11th Cir. 2013), *cert. granted*, 134 S. Ct. 2136 (2014).

decision and the written record, they can clearly not be the same document." *Id*. (quoting *AT&T Wireless PCS, Inc. v. City Council of Virginia Beach*, 979 F. Supp. 416, 428 (E.D. Va. 1997), *rev'd*, 155 F.3d 423 (4th Cir. 1998)). "Additionally, the decision 'must contain written findings of fact tied to the evidence of record.'" *Id*. at 56 (quoting *AT&T Wireless Servs. of Fla., Inc. v. Orange Cnty*, 982 F. Supp. 856, 859 (M.D. Fla. 1997). In a later case, the same court determined that "[a] local zoning authority must issue a decision in writing setting forth the reasons for the decision and linking its conclusions to evidence in the record." *Omnipoint Commc'ns., Inc. v. Planning & Zoning Comm'n of Wallingford*, 83 F. Supp. 2d 306, 309 (D. Conn. 2000) (citation omitted). The *Wallingford* court reasoned that "[b]y failing to provide reasons for its decision, the Commission places the burden on this Court to wade through the record below in an attempt to discern the Commission's rationale." *Id*. (quoting *Smart SMR*, 995 F. Supp. at 57). The *Stratford/Wallingford* rule effectively requires formal findings of fact and conclusions of law, akin to the strictures of the Administrative Procedure Act (APA). *See Todd*, 244 F.3d at 59.

The second approach, considered the majority rule, was articulated by the First Circuit in *Todd*. The *Todd* court held that "the TCA requires local boards to issue a written denial separate from the written record. That written denial must contain a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons." *Id.* at 60. The Seventh and Ninth Circuits subsequently adopted this interpretation. *See Helcher v. Dearborn Cnty*, 595 F.3d 710, 719 (7th Cir. 2010); *MetroPCS, Inc. v. City & Cnty of S.F.*, 400 F.3d 715, 722 (9th Cir. 2005).[3]

---

[3] The Tenth Circuit followed this approach in an unpublished decision. *U.S. Cellular Corp. v. Bd. of Adjustment of City of Seminole, Okla.*, 180 F.Appx. 791, 793–94 (10th Cir. 2006) (per curiam). The Sixth Circuit ostensibly adopted the *Todd* rule in *New Par*, 301 F.3d at 395–96, but subsequently modified it in *Southfield*, 355 F.3d at 605.

The First Circuit rejected the formal requirement of "findings of fact" in *Wallingford* as having "no basis in the language of the [TCA]." *Todd*, 244 F.3d at 59. The court held that because local boards "are primarily staffed by laypeople. . . . it is not realistic to expect highly detailed findings of fact and conclusions of law." *Id.* at 59–60. The court nevertheless found that the approach adopted by the Fourth and Eleventh Circuits *infra* too light, holding that "permitting local boards to issue written denials that give no reasons for a decision would frustrate meaningful judicial review, even where the written record may offer some guidance as to the board's rationale." *Id.* at 60. The court noted that "[t]he TCA distinguishes between a written denial and a written record, thus indicating that the record cannot be a substitute for a separate denial." *Id.* (citation omitted). As such, "[e]ven where the record reflects unmistakably the Board's reason for denying a permit, allowing the written record to serve as the writing would contradict the language of the [TCA]." *Id.* (citation omitted). In short, the *Todd* rule requires that a denial "must (1) be separate from the written record; (2) describe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons." *New Par*, 301 F.3d at 395–96.

The Sixth Circuit developed a third approach to the TCA's "in writing" requirement. In *New Par*, the court adopted the *Todd* rule, but the court took a different tack in *Southfield*. In *Southfield*, the city council denied a permit after a public hearing. *Southfield*, 355 F.3d at 603. In a formal resolution, the council voted to deny the application and listed eight reasons for the denial. *Id.* The minutes of the council meeting, which contained the resolution, constituted the only "writing" containing the denial. *Id.* at 606. The *Southfield* court noted that "there is no guidance in *New Par* as to what constitutes the written record." *Id.* at 605. The court opined that "the TCA makes no mention of the writing being in a separate document." *Id.* at 606. The court reasoned that because the city council speaks through its resolutions, the "formal resolution is a writing separate from the hearing record." *Id.* "Although the *minutes* of a council meeting will encompass all the matters considered by the

council at that meeting, each resolution deals with only one discrete subject." *Id.* The court found that this was sufficient to meet the "separate writing" requirement of the TCA because "[t]he primary purpose of the separate writing requirement is to allow a reviewing court to focus with precision on the action that was taken and the reasons supporting such action." *Id.* Thus the *Southfield* rule requires only that a local board's action be sufficiently discrete to allow a reviewing court to identify the action taken and why it was taken.

The Fourth and Eleventh Circuits developed yet a fourth interpretation of "in writing," on the opposite end of the spectrum from *Wallingford*. In *Virginia Beach*, the Fourth Circuit confronted the following facts:

> The Council ultimately voted unanimously to deny the application, a decision recorded both in a two-page summary of the minutes—describing the application, listing the names and views of all who testified at the hearing, and recording the votes of each councilman—and in a letter from the Planning Commission to the City Council describing the application and stamped with the word "DENIED" and the date of the City Council's vote. Consistent with its usual practice, the Council did not generate written findings of fact concerning its vote, nor did it produce a written explanation of the basis for its vote.

155 F.3d at 425. The court held that "the City Council's decision clearly was 'in writing.'" *Id.* at 429. The following year, the court held that "the secretary [of the city council] writing 'Denied' on the first page of AT&T's application, in the stamped form for approval or denial of this and similar requests, fulfills the 'in writing' requirement of § 332(c)(7)(B)(iii)." *AT&T Wireless PCS, Inc. v. Winston-Salem Zoning Bd. of Adjustment*, 172 F.3d 307, 312 (4th Cir. 1999).

Like the *Todd* court, the Fourth Circuit rejected the *Wallingford* "findings of fact" rule, holding that while the APA requires "a statement of . . . findings and

conclusions, and the reasons or basis therefor," § 332 of the TCA contains no such requirement. *Virginia Beach*, 155 F.3d at 429–30. Noting that "Congress knows how to demand findings and explanations" and did not do so in § 332, the court reasoned that "the simple requirement of a 'decision . . . in writing' cannot reasonably be inflated into a requirement of a 'statement of . . . findings and conclusions, and the reasons or basis therefor.'" *Id*. at 430. The court held that the "substantial evidence" requirement—not the "in writing" clause—ensured that the court received enough information to allow for effective judicial review. *Id*.

The Eleventh Circuit similarly held that the "in writing" requirement is a light burden. *T-Mobile S., LLC v. City of Milton, Ga.*, 728 F.3d 1274 (11th Cir. 2013). Like North Platte, the City of Milton first addressed a permit for construction of a telecom tower through a planning commission (in *Milton*, the city considered three separate permits for three proposed tower locations). *Id.* at 1277. The commission then made a recommendation to the city council. *Id.* at 1278. After a public hearing, individual city council members moved to deny two of the applications and "stated on the record five 'not exhaustive' reasons for denial," whereupon the city council voted to deny the applications. *Id*. The city council subsequently sent letters informing T-Mobile of the denials but did not state the reasons for them. *Id*. at 1279. The hearings were recorded, transcribed, and memorialized in the minutes, which "detail[ed] the reasons given in support of and in opposition to each application, and the motions and their grounds, and recite[d] the unanimous vote on them." *Id*. at 1279–80.

The *Milton* court rejected both the *Wallingford* and *Todd* (and implicitly *New Par* and *Southfield*) rules as expansions of the statutory text. The court reasoned:

> The words of the statute we are interpreting require that the decision on a cell tower construction permit application be "in writing," not that the decision be "in a separate writing" or in a "writing separate from the transcript of the hearing and the minutes of the meeting in which the hearing was held" or "in a single writing that itself contains

all of the grounds and explanations for the decision." *See* 47 U.S.C. § 332(c)(7)(B)(iii). So, to the extent that the decision must contain grounds or reasons or explanations, it is sufficient if those are contained in a different written document or documents that the applicant is given or has access to. All of the written documents should be considered collectively in deciding if the decision, whatever it must include, is in writing.

*Id.* at 1285.

We are persuaded that the Fourth and Eleventh Circuits have articulated the better rule. Nowhere does the statutory text require that the denial and the "written record" be separate writings. Section 332 requires only that the denial and the record both be written. Section 332 does not require that the written denial state the reasons for the denial. Congress may require an agency or board to state its findings. *See, e.g.,* 5 U.S.C. § 557(c). Congress did not do so here.

Here, the parties agree that the City Council's decision was written: the City Council passed and memorialized a formal resolution. The TCA requires no more than this. The City did not run afoul of the TCA by recording its decision in the "written record."

B. *"Supported by Substantial Evidence"*

"The TCA's 'substantial evidence' requirement does not impose substantive standards on local governments. Rather, it requires a reviewing court to determine whether the local authority's decision comports with applicable local law." *City of Ferguson, Mo.*, 583 F.3d at 1042 (citing *Platte Cnty, Mo.*, 578 F.3d at 733). The "substantial evidence" standard is not a demanding one. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence, however, does not

-11-

mean a preponderance of the evidence." *Menendez-Donis v. Ashcroft*, 360 F.3d 915, 919 (8th Cir. 2004) (quotation and citations omitted).

In this case, several sections of the North Platte Code of Ordinances compose the "applicable local law." The parties agree that the proposed site of the tower is "eligible for the placement of a telecommunications tower after application, and receipt, of a [CUP], which must be approved by the North Platte City Council." North Plate Code § 156.322(A)(5) provides that a conditional use "shall be in harmony with the character of the area and the most appropriate use of the land." The question before us, therefore, is whether the City had substantial evidence before it that the proposed tower would have been out of harmony with the character of the neighborhood. *See Omnipoint Corp. v. Zoning & Hearing Bd. of Pine Grove Twp.*, 181 F.3d 403, 408 (3d Cir. 1999).

Here, the City Council had before it the testimony of a dozen residents that the proposed tower would be an "eyesore," would be inappropriate for the neighborhood, and would not be harmonious with the neighborhood.[4] In the context of a zoning decision, this is enough for a "reasonable mind" to accept as "adequate to support a conclusion" that the proposed tower would be out of place in the neighborhood. *See Menendez-Donis*, 360 F.3d at 919. Thus, the City's decision is supported by substantial evidence.

The City Council's denial of a CUP to construct the proposed telecom tower was both "in writing" and "supported by substantial evidence." The district court did not err in granting summary judgment to the City.

---

[4]We agree with the district court that "[t]he Council could have done a better job articulating the nature of the neighborhood's historic character." However, the "historic" nature of the neighborhood is not the dispositive issue. The question is whether the proposed tower would have been out of character with the area, regardless of how it is described.

### III. *Conclusion*

The judgment of the district court is affirmed.

_____